# EXHIBIT A

IN THE CIRCUIT COURT, SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

YVONNE PRIGENT LACKS,

      Plaintiff,                              Case No.

v.

BANK OF AMERICA, N.A., AS
SUCCESSOR IN INTEREST TO
MERRILL LYNCH BANK & TRUST
CO., FSB; DEUTSCHE BANK TRUST
COMPANY, N.A., AS PURPORTED
SUCCESSOR TRUSTEE OF ROGER
PRIGENT 2010 REVOCABLE TRUST
DATED MARCH 22, 2010; DAVIDSON,
DAWSON & CLARK, LLP; P. GREGORY
HESS; and JONATHAN KASS;

      Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA:

To All and Singular the Sheriffs of said State:

    YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint
or Petition in this action on Defendant:

                BANK OF AMERICA, N.A. as Successor in Interest to Merrill Lynch
                Bank & Trust Co.
                c/o its Registered Agent
                CT Corporation System
                1200 South Pine Island Road
                Plantation, FL  33324

    Each Defendant is required to serve written defenses to the Complaint or Petition on
Plaintiff's attorneys:

                WILLIAM E. ANDERSEN
                SEAN P. SHEPPARD, Of Counsel

Attorneys for Plaintiff
The Andersen Firm
A Professional Corporation
500 E. Broward Boulevard, Suite 1600
Fort Lauderdale, Florida 33394
Phone: 866.230.2206   Fax: 877.773.1433
Florida Bar #168697
Primary: sean@sheppardfirm.com
Secondary: jgula@theandersenfirm.com,

within 20 days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition.

WITNESS my hand and the Seal of said Court this _____      AUG 16 2016      __.

HOWARD C. FORMAN
As Clerk of said Court

By: _____
As Deputy Clerk

HOWARD C. FORMAN

Filing # 45198393 E-Filed 08/15/2016 09:46:33 AM

## IN THE CIRCUIT COURT, SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

YVONNE PRIGENT LACKS,

      Plaintiff,                            Case No.

v.

BANK OF AMERICA, N.A., AS
SUCCESSOR IN INTEREST TO
MERRILL LYNCH BANK & TRUST
CO., FSB; DEUTSCHE BANK TRUST
COMPANY, N.A., AS PURPORTED
SUCCESSOR TRUSTEE OF ROGER
PRIGENT 2010 REVOCABLE TRUST
DATED MARCH 22, 2010; DAVIDSON,
DAWSON & CLARK, LLP; P. GREGORY
HESS; and JONATHAN KASS;

      Defendants.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, YVONNE PRIGENT LACKS, by and through the undersigned counsel, and files this Complaint as against Bank of America, N.A., as successor in interest to Merrill Lynch Bank & Trust Co., FSB; Deutsche Bank Trust Company, N.A., as Successor Trustee of Roger Prigent 2010 Revocable Trust dated March 22, 2010; Davidson, Dawson & Clark, LLP; P. Gregory Hess; and Jonathan Kass; and in support thereof, states as follows:

## PRELIMINARY STATEMENT

1.      This is an action by Plaintiff as against Bank of America, N.A., as successor in interest to Merrill Lynch Bank & Trust Co., FSB; Deutsche Bank Trust Company, N.A., as Successor Trustee of Roger Prigent 2010 Revocable Trust dated

1

March 22, 2010; Davidson, Dawson & Clark, LLP; P. Gregory Hess seeking damages which exceed $15,000.00 exclusive of any claim for any award of interest, attorney's fees and costs, together with certain claims for other declaratory and injunctive relief as set forth herein.

2.      A copy of the purported Last Will & Testament of Roger Prigent dated March 22, 2010 is attached hereto as Exhibit "A" to this Complaint.

3.      A copy of the purported Roger Prigent 2010 Revocable Trust dated March 22, 2010, is attached hereto as Exhibit "B" to this Complaint (hereinafter referred to simply as the "Trust").

4.      Plaintiff brings this action in her individual capacity, as beneficiary of Roger Prigent ("Decedent"), as there have been substantial losses realized and damages otherwise incurred as a result of the actions and inactions of the Defendants as set forth herein.

5.      Plaintiff has filed a Petition to Vacate the Decree admitting the purported Last Will & Testament of ROGER PRIGENT dated March 22, 2010 in the State of New York, as Plaintiff contends that said document is invalid and otherwise unenforceable as a matter of fact and as a matter of law for the entirety of those reasons specified therein. Such Petition to Vacate the Decree has been filed but has not yet been ruled upon. Regardless of the ruling on said Petition to Vacate the Decree, there exist claims for relief that must be determined as set forth herein.

## PARTIES

6.      Plaintiff, YVONNE PRIGENT LACKS, is an interested person, as the surviving biological sister of Roger Prigent, deceased (hereinafter referred to as

2

"Decedent"), next of kin of said decedent, and primary beneficiary of said decedent's estate.

7.      Plaintiff has standing to bring these actions, as Plaintiff is a person interested who possesses a material and/or pecuniary interest that is affected by the attempted probate of the purported Last Will & Testament of ROGER PRIGENT dated March 22, 2010, the administration of the same, and the administration of the purported Trust.

8.      Defendant, Bank of America, N.A., as successor in interest to Merrill Lynch Bank & Trust Co., FSB, is the purported executor of the March 22, 2010 Last Will & Testament of the Decedent, Roger Prigent, and is sued in such capacity. At all times material hereto, Defendant, Bank of America, N.A., has conducted regular and continuing business throughout the State of Florida.

9.      Defendant, Bank of America, N.A., as successor in interest to Merrill Lynch Bank & Trust Co., FSB, was the employer of Jonathan Kass, who was the financial advisor of the Decedent, Roger Prigent, and is also sued in such capacity. At all times material hereto, Defendant, Bank of America, N.A., has conducted regular and continuing business throughout the State of Florida.

10.     Defendant, Deutsche Bank Trust Company, N.A., is the Successor Trustee of the purported Trust, and is sued in such capacity. At all times material hereto, Defendant, Deutsche Bank Trust Company, N.A., has conducted regular and continuing business throughout the State of Florida.

11.     Defendant, Davidson, Dawson & Clark, LLP, is the employer of both P. Gregory Hess and Louise M. Fitzsimons, and was the law firm which represented the

3

Decedent before his death and the Estate of the Decedent following his death, and is sued in such capacities. At all times material hereto, Defendant, Davidson, Dawson & Clark, LLP, has advertised its firm, through its attorneys having active Florida Bar licenses, and has solicited legal business within the State of Florida, and performed legal work for clients in the State of Florida.

12.     Defendant, P. Gregory Hess, is an attorney who purportedly represented the Decedent before his death and has undertaken continuing representation of the Estate of the Decedent following his death, and is sued in such capacities. At all times material hereto, Defendant, P. Gregory Hess, has maintained continuing and substantial contacts to the State of Florida, including maintaining of residence in Deerfield Beach, Florida and maintaining of an active Florida Bar license.

13.     Defendant, Jonathan Kass, is a financial advisor who purportedly represented the Decedent before his death, and is sued in such capacity. At all times material hereto, Defendant, Jonathan Kass, has maintained continuing and substantial contacts to the State of Florida, including the maintenance of an active license to conduct business as a financial advisor within the State of Florida.

## FACTS COMMON TO ALL CAUSES OF ACTION

14.     On or about January 11, 2013, Bank of America, N.A., as successor in interest to Merrill Lynch Trust Company, as purported executor, by and through P. Gregory Hess, attorney, filed a Petition for Probate (hereinafter "Petition for Probate") of the purported March 22, 2010 Last Will & Testament of the Decedent.

4

15.     Included within the filing was the purported Last Will & Testament of the Decedent dated March 22, 2010, and a purported self-proving affidavit bearing the same date.

16.     The self-proving affidavit contained the following language:

> "The testator, in the respective opinions of the undersigned [P. Gregory Hess and Louise M. Fitzsimons], could read, write and converse in the English language and was suffering from no defect of sight . . . or from any other physical or mental impairment which would affect his capacity to make a valid Will."

17.     In fact, the Decedent, as of March 22, 2010 was completely blind.

18.     On March 22, 2010, P. Gregory Hess and Louise M. Fitzsimons were both attorneys with the law firm of Davidson, Dawson & Clark, LLP, and had an attorney-client relationship with the Decedent.

19.     On March 22, 2010, Louise M. Fitzsimons and P. Gregory Hess were both employed by the law firm of Davidson, Dawson & Clark, LLP.

20.     On March 22, 2010, both P. Gregory Hess and Louise M. Fitzsimons were aware of the fact that the Decedent was completely blind.

21.     The self-proving affidavit was purportedly notarized by Dorothy Schreiber on March 22, 2010.

22.     Apparently realizing, after the death of Decedent and after the filing of the Petition for Probate, that the self-proving affidavit contained false information regarding the Decedent's eyesight, Ms. Fitzsimons prepared for filing an Affidavit dated February 25, 2013, which is also purportedly notarized again by Dorothy Schreiber.

23.     The February 25, 2013 Affidavit of Ms. Fitzsimons attaches an Exhibit "A" and Exhibit "B" and incorporates the same by reference.  Exhibit "A" is the purported March 22, 2010 self-proving affidavit, while Exhibit "B" is a February 17, 2010 "Memorandum" prepared on Davidson, Dawson & Clark LLP letterhead.

24.     Exhibit "B" is a "Memorandum" prepared by Louise M. Fitzsimons.  The Memorandum states, unequivocally that on Friday, February 12, 2010, and not Monday, March 22, 2010, Greg Hess and Louise M. Fitzsimons met with Jonathan Kass at the apartment of the Decedent for purposes of purportedly executing the March 22, 2010 Last Will & Testament and the March 22, 2010 Roger Prigent 2010 Revocable Trust.  The Memorandum describes the following persons as being present for the execution of the documents: (a) Greg Hess; (b) Louise M. Fitzsimons; (c) Jonathan Kass; and (d) Yvonne Lacks.  It is worth noting that a reference is made within the Memorandum that an "attendant" assisted the Decedent through the kitchen and to the area where the purported signing took place, but there is no reference to the "attendant" being present during the signing of the purported documents.

25.     The Memorandum does not describe any circumstance under which the Decedent was specifically made aware of the contents of either the purported Last Will & Testament or the Roger Prigent 2010 Revocable Trust.  Instead, the only references to discussions involving the Decedent were as follows:

> "Greg [Hess] began discussing why we were there and discussed the revisions which had been made to the revocable trust at Mr. Prigent's request. . . . Greg [Hess] paraphrased the substantive provisions of the revocable trust, both occurring before and after Mr. Prigent's death. . . . The Will was the next document to be signed and Greg [Hess] explained the provisions, which were that anything

6

remaining in his name at the time of his death would be distributed to the revocable trust (that he had just signed) and disposed of in accordance with the provisions of the trust."

26.     There is no reason that the documents that were purported signed on March 22, 2010 could not have been read, in their entirety, to the Decedent who was completely blind. There is no reason provided as to why such a process was not utilized in this instance.

27.     There is no explanation given as to why the Memorandum dated February 17, 2010 referencing the execution of the purported documents on that date, does not comport with the dates on the actual purported documents (March 22, 2010).

28.     On the face of the record in this matter, there is a purported March 22, 2010 Last Will & Testament, which includes a purported self-proving affidavit stating that the Decedent suffered from **no** impairment and that he was able to read, despite the fact that he was completely blind on that date. The Memorandum, which has no relation to the March 22, 2010 date, and instead references a date of February 12, 2010, does nothing in the way of helpful explanation. Instead, the February 12, 2010 Memorandum only further confuses the issues and calls into question what has happened with the Decedent and the purported signing of documents.

29.     The Memorandum was purportedly drafted by Ms. Fitzsimons on February 17, 2010 and references the signing of the Last Will & Testament of the Decedent as well as a revocable trust of the Decedent some five (5) days earlier on February 12, 2010. The Memorandum, on its face was made within five (5) days of the date of the purported acts to which it refers, and the information recalled was, at that

7

time, apparently fresh in the mind of its drafter.  Again, there is no reference within the Memorandum to any events on March 22, 2010, as the Memorandum predates March 22, 2010.

30.     Defendant, Jonathan Kass, who was the purported financial advisor to the Decedent, was present on the purported date of execution of the purported March 22, 2010 Last Will & Testament and the purported March 22, 2010 Roger Prigent 2010 Revocable Trust.  Defendant, Jonathan Kass apparently had and continues to have two (2) minor children; to wit: Jonah Kass, born September 29, 2006 and Jayden Kass, born June 3, 2003.  According to the Roger Prigent 2010 Revocable Trust, the Decedent made a provision of $200,000.00 to said financial advisor's two (2) minor children ($100,000.00 to each child), and is entirely inappropriate for the document to include a provision of benefit to the financial advisor of the blind Decedent through said financial advisor's minor children.

31.     There is absolutely no reference in the Memorandum by Ms. Fitzsimons dated February 17, 2010, to any discussion with the Decedent or acknowledgement of the Decedent regarding the inclusion of this large provision to the two (2) minor children of the financial advisor of the Decedent.  Plaintiff is unaware of any personal relationship that existed between Decedent and the financial advisor and/or the financial advisor's children, which would warrant the inclusion of such a substantial provision.

32.     At all times material hereto, Merrill Lynch maintained the following policy and procedure, which governed the actions of Defendant, Jonathan Kass, of which Mr. Kass was fully aware:

8

> **"Gifts, Gratuities and Other Payments Related to Merrill Lynch Business**
>
> Merrill Lynch persons **and their family members** may not, directly or indirectly, accept or receive bonuses, fees, gifts, frequent or excessive entertainment, or any similar form of consideration that is of more than nominal value from any person or entity with which Merrill Lynch does, or seeks to do, business." (Emphasis added herein).

It is important to note that the foregoing policy of Merrill Lynch specifically refers to both Merrill Lynch persons and their family members, and specifically prohibits acceptance or receiving of any gifts from clients of more than a nominal value. Obviously, the purported gift of $200,000.00 from a client of Merrill Lynch to the family members of Defendant, Jonathan Kass, was a prohibited transaction.

33.    It is also important to note that both P. Gregory Hess and Louise M. Fitzsimons, attorneys with the law firm of Davidson, Dawson & Clark, LLP, and the attorneys for the Decedent, participated in having their client sign a document purportedly granting $200,000.00 to Defendant's, Jonathan Kass's (the financial advisor of the Decedent's), children without any reference to any discussion being had with the Decedent to advise the Decedent specifically of the same. Moreover, there exists no language within the document itself providing any explanation as to why the financial advisor's children were purportedly being left $200,000.00 by the Decedent.

34.    Beginning in the year 2004 and continuing for the duration of his life, the Decedent, being blind, required various aids and friends to assist him in daily life, and also assisted the Decedent in his passion of amassing his personal collection of unique personal property. The Decedent's sister, Yvonne Lacks, ran the business, Malmaison Antiques, alongside Mr. Prigent for many years. Mr. Prigent was blind and could not see

9

the items that he was purchasing or selling and he needed and relied on Ms. Lacks' expertise to assist him.

35.    One of the Decedent's closest friends, and one who also provided regular and continued assistance to the Decedent, was Alberto Barral. Alberto Barral is an Art Advisor by trade and has known the Decedent since 1990. Mr. Barral organized the sale of Malmaison's inventory through Christie's when Mr. Prigent closed the antiques store, and thereafter he hired Mr. Barral as his Office Manager for the Decedent's business, Malmaison Enterprises, managing and administering the sale of antique and modern furniture. Mr. Barral normally worked and assisted Mr. Prigent on Mondays, Wednesdays and Fridays. Additionally, Mr. Barral was the Decedent's health care surrogate from January 2012 through December 2012. During his time with the Decedent, Alberto Barral developed a schedule whereby he would assist the Decedent by going over the business at hand first thing in the morning, which involved standing offers for pieces, appointments to the warehouses to show the furnishings to potential buyers, and to discuss pieces that were coming up for auction. These pieces had to be described in detail as Mr. Prigent was unable to see them, but he liked to touch them meticulously in the viewings. Mr. Prigent along with Mr. Barral and Ms. Lacks would constantly consult the books of records they kept to discuss the pieces in the process of being sold. Ms. Lacks taught Mr. Barral how to read the books and records so that he could fully understand the process that they had put in place, and to understand which pieces belonged to the business and which pieces were part of either Mr. Prigent's or Ms. Lacks' personal collections. Mr. Barral also coordinated the medical care of Mr. Prigent by scheduling doctor appointments and arranging for his various aides to care for him.

36.     Obviously, P. Gregory Hess and Jonathan Kass had significant financial interests in the Decedent's affairs.  Over the course of Mr. Barral's relationship with the Decedent, Mr. Barral became aware (through both discussions with the Decedent and his own personal observations) that P. Gregory Hess, Jonathan Kass and Michael Resnick would purposefully make visits to the Decedent's residence at times when Mr. Barral was not present.  Mr. Barral would know this because the Decedent would complain to Mr. Barral regarding this fact when Mr. Barral would return.  Over time, these concerns grew stronger and Mr. Barral was suspicious that P. Gregory Hess', Jonathan Kass', and Michael Resnick's actions were intentionally designed to avoid Mr. Barral being present when they came to visit with the Decedent to sign papers.  On one occasion (November 12, 2012), Mr. Barral was not present at the Decedent's residence since it was a Tuesday (not one of his scheduled work days).  Having forgot something at the Decedent's residence, Mr. Barral arrived at the Decedent's residence unexpectedly.  However, upon approaching the Decedent's building, Mr. Barral saw P. Gregory Hess, Jonathan Kass and Mr. Resnick in the cafe that was immediately downstairs.  Not believing that the meeting at that particular location was a coincidence, Mr. Barral waited and watched.  He observed, P. Gregory Hess, Jonathan Kass and Mr. Resnick meet at the restaurant for approximately fifteen minutes, and then while the gentlemen were still seated in the restaurant, he proceeded upstairs and into Mr. Prigent's apartment.  Minutes later, the gentlemen began to arrive at the Decedent's apartment, however, they arrived one by one as if they had not been meeting together downstairs just minutes before.

37.     P. Gregory Hess, Jonathan Kass and Mr. Resnick then attempted to have the Decedent sign an Irrevocable Trust.  The Decedent became extremely agitated and

11

refused to sign the Irrevocable Trust. P. Gregory Hess, Jonathan Kass and Mr. Resnick also presented the Decedent with a Resignation as Trustee of his own Trust which the Decedent refused to sign, and instead angrily scratched through the place for his signature where they placed his hand to sign the document.

38.     On another instance in May of 2010, the Decedent was in a rehabilitation facility with a broken hip and P. Gregory Hess, Jonathan Kass and Mr. Resnick all met at the facility to have the Decedent sign an amendment to his Revocable Trust of March 22, 2010. The Decedent's very close friends, Alexandre and Elaine deBothuri, were present at this meeting and the Decedent was heavily drugged and specifically stated that he did not understand what they were discussing and that it was not the right time to go over this information, but they insisted that he sign the document and he did so. Again, there was no indication made in the Amendment that the Decedent was blind.

39.     The purported Trust, contained a provision appointing Merrill Lynch Bank & Trust Co., FSB, as Trustee. Such an appointment carried with it the substantial financial benefits of acting in such capacity. Specifically, the purported Trust, contained the following provision:

> "Section 10.1 A Corporate trustee shall receive payment for
> its services in accordance with its schedule of rates in effect
> at the time such compensation becomes payable."

Bank of America, N.A. was successor to Merrill Lynch Bank & Trust Co., FSB, and was entitled to become trustee. However, without explanation provided, Bank of America, N.A. rejected the appointment as Trustee, thereby rejecting substantial sums of money to act in the capacity as Trustee. The assets of the Decedent were estimated to be approximately $8,000,000.00, and the fees that Bank of America, N.A. could have earned

in the capacity as trustee, as well as other derivative income that could have been earned from its other divisions (i.e. investment advisors, etc.) who could have been retained pursuant to the authority purportedly granted to the Trustee by the Decedent, are very substantial. In light of the lack of explanation provided for refusing to act in the capacity as Trustee, Plaintiff contends that perhaps Bank of America, N.A., realizing that one of its own financial advisor's children were named as being provided with $200,000.00 from the Decedent, recognizing the issues surrounding such a transaction, opted out of being further involved with the assets of the Decedent.

40.    On the very first filing regarding the probate of the decedent's estate, there was an immediate allegation that Plaintiff, Yvonne Prigent Lacks, was suffering from dementia and that a guardian ad litem was necessary. On March 21, 2013, the guardian ad litem, Ms. Suzanne Carter, was appointed to represent the interests of the Plaintiff. It should be noted that, despite the filings of P. Gregory Hess on January 11, 2013, the Plaintiff had never previously been diagnosed with dementia.

41.    Following her appointment as guardian ad litem, Ms. Carter proceeded to repeatedly request an independent evaluation to determine the Plaintiff's condition.

42.    On May 28, 2013, Ms. Carter states that the Plaintiff is in need of an independent evaluation to assess her mental capacity.

43.    On June 25, 2013, Ms. Carter again states that the Plaintiff requires an independent medical evaluation to assess her mental capacity.

44.    Despite repeated references within the reports of the guardian ad litem to the need for an independent examination, no such examination was conducted until

13

December of 2015. As a result of that examination, a report was generated on December 23, 2015, in which it is stated that Plaintiff does not suffer from any form of dementia.

45.     Plaintiff, Yvonne Prigent Lacks, contends that, in light of the totality of the other circumstances surrounding this matter, the Defendants continued to act in an effort to maintain complete control over the Decedent's assets to the exclusion of Plaintiff, to continue to cover up the fact that the blind Decedent was taken advantage of during his lifetime, and to avoid exposure of their past acts.

46.     At all times material hereto, the Decedent was physically impaired to the extent that he was completely blind.

47.     Plaintiff contends that the following procedures should have been followed in order for the Decedent's purported Last Will & Testament dated March 22, 2010 and Decedent's purported Trust to be valid and enforceable:

        a.     An attorney supervises the execution of the will;

        b.     One of the witnesses reads the will aloud to the testator in the presence of two additional witnesses;

        c.     After the will is read aloud, the testator states that it is his or her will and signs the will with the assistance of one of the witnesses; and

        d.     The attestation clause is read aloud and the attesting witnesses signed their names in the presence of the testator.

48.     As the foregoing procedures were admittedly never followed, the documents purportedly executed on March 22, 2010 are invalid and unenforceable as a matter of law.

14

49.    At all times material hereto, the Decedent relied upon the services being provided by those holding positions of trust and confidence with him; to wit: his attorneys and his financial advisor.

50.    The financial advisor to the Decedent who caused the provision of $200,000.00 from the Decedent to his own two (2) minor children, abused his position of trust and confidence.

51.    Plaintiff contends that the Decedent's trusted professionals failed him, breached fiduciary duties to him and engaged in fraudulent acts and omissions. Plaintiff contends that the Decedent's attorneys had an obligation to constantly look out for the best interests of the Decedent, including but not limited to ensuring that the Decedent was fully aware of the content of the documents which they encouraged him to sign. The failure of the attorneys involved to read the documents in the presence of the Decedent renders the documents purported executed on March 22, 2010, invalid and unenforceable. Moreover, the attorneys for the Decedent who drafted the documents at issue, including but not limited to the Roger Prigent 2010 Revocable Trust, which included a $200,000.00 provision for Jonathan Kass's children, have failed in their obligation to protect the decedent. The attorneys for the Decedent who allowed for the documents to be executed on March 22, 2010, including the $200,000.00 provision, without reading such provision to the Decedent renders the documents purported executed on March 22, 2010, invalid and unenforceable.

52.    Following the death of Decedent, the purported Last Will & Testament of ROGER PRIGENT dated March 22, 2010 and the purported Trust have proceeded through the administration process.

15

53.    During the administration process, the Defendants have assumed their purported roles as attorney for the estate of Decedent (Dawson & Clark, LLP and P. Gregory Hess), Executor of the Estate (Bank of America), and Trustee of the purported Trust (Deutsche Bank).

54.    Plaintiff contends that the purported Last Will & Testament of ROGER PRIGENT dated March 22, 2010 and the purported Trust are invalid and unenforceable. However, regardless of the decision on those issues, the Estate and the assets currently held in the purported Trust have suffered substantial damage due to the mismanagement and negligence of the Defendants, attorney for the estate of Decedent (Dawson & Clark, LLP and P. Gregory Hess), Executor of the Estate (Bank of America), and Trustee of the purported Trust (Deutsche Bank).  Specifically:

a.    Upon the death of Decedent, the Defendants assumed custody and control of the substantial personal property of the Decedent.  By the time of his death, the Decedent had accumulated masses of rare and valuable antiques, sculptures, artifacts, fine art, paintings, one-of-a-kind furniture and furnishings, and other items of personal property (hereinafter referred to as "Personal Property").  Some of the items of Personal Property are traced back to ownership by Napoleon Bonaparte, were used in historical films like "Gone With The Wind," and are otherwise one-of-a-kind irreplaceable items.  These items of Personal Property were treasured by the Decedent during his lifetime and he took great care in maintaining over the course of his life.

16

b.      The Defendants were fully aware of the value and importance of the Personal Property to the Decedent, and the need that proper and diligent care be taken to protect the value of said Personal Property from damage and waste.

c.      Despite having such knowledge, and upon assuming their respective and purported roles as caretakers for the Personal Property, the Defendants failed.

d.      An inspection of the Personal Property was permitted to Mr. Alberto Barral on January 27-28, 2016, during which inventory and examination of the Personal Property at the Decedent's apartment was completed.

e.      As a result of that inspection, it was determined that, upon assuming custody and control of the Personal Property, the Defendants allowed the Personal Property to be damaged by their failure to properly store, move and handle the Personal Property.   It appears from the current condition of the Personal Property, compared to the condition immediately prior to the death of Decedent, that the Personal Property has been moved several times, and that temperature control was not properly monitored and maintained in order to protect the Personal Property from damage since the death of the Decedent in December, 2012.

f.      Evidence of water damage in some pieces in the dining room area indicate there must have been water coming in from a leak in the ceiling at some point, and for a long period of time, where it damaged paintings, sculptures, furniture and furnishings within the Decedent's apartment.

17

g.     Following water damage to the Decedent's apartment, and during the time that the various Defendants were acting in their respective capacities, an insurance claim was made due to damage to the wood floors in the Decedent's apartment. At that time, the Defendants failed to make any claim for any damage to the Personal Property, and proceeded to mishandle the Personal Property, as described herein, causing further damage to the Personal Property.  During the insurance claim process, the floors were refinished and the walls repainted.  At that time, it is believed that the Personal Property was moved by the Defendants through third party movers, stored off site at a warehouse of some kind, and no proper care was taken by anyone taking into consideration the historical, sentimental, and actual value of the Personal Property.

h.     Other evidence of damage was caused by extreme heat.  Therefore, the apartment remained for long periods of time with no air conditioning, during the entire summer seasons, just as it remained without appropriate heating during the winters.  Some broken heaters in the salon area of the Decedent's apartment also support this contention.  There is substantial evidence of mold, mildew and staining on the items of Personal Property which is further indication of the failure to properly care for the Personal Property.

i.     The moving of the furniture must have been done by amateurs and with next to none, or no protection from blankets or bubble wrap, as there are everywhere present scratches, chips, entire pieces of wood, missing handles, and other damage, none of which were present immediately prior to the death of the Decedent.  Some of the items were held together by tape.

18

j.      The paintings were equally mistreated. There were a large number stacked against the walls in the former office with no cardboard or any protection of any kind in between the pieces, meaning the cables, nails and hooks that are screwed to the frames of the paintings and drawings for hanging, were actively damaging the paintings.  The same applies to the large amount of paintings and drawings in the hallway closet.  Some of the paintings actually had holes in the canvas due to the failure on the part of Defendants to properly care for and maintain the paintings.

k.      One of the items was an "illuminated Lucite Bed" created for Helena Rubenstein.  This item was treasured by the Decedent and kept in exceptional condition.  The bed was valued in excess of $100,000.00.  It was requested for a museum exhibit in New York, but when it was delivered, the curator of the museum was distraught because it was so badly damaged.  An attorney for Plaintiff at the time requested that an insurance claim be made regarding the bed, but the Defendants said that the bed was in the same condition as when the Decedent died, and refused to make a claim.

l.      The market for antiques of the kind owned by the Decedent clearly reflects the paramount importance of condition and provenance. Taking these factors into account and the extensive damage to the Personal Property in the Decedent's apartment, the Personal Property is arguably totaled as a result of the damage, and, at the very least, the Personal Property is substantially devalued. Regardless of the value, the collection of Personal Property could not be sold in its current condition, and would require expensive and time consuming restoration

19

work to repair the damage that has been caused by the failure of the Defendants to properly care for the Personal Property.

      m.     In addition to the foregoing, while the Decedent was on his death bed and immediately after his death, the Defendant, P. Gregory Hess, permitted, a relative of the Decedent, Roger Djeribi (aka Geribi), access to and permission to stay at the Decedent's apartment. At the time such permission was granted, the Decedent was incapable of being advised of or consenting to the same. Had he been consulted, the Decedent certainly would have objected, as Mr. Djeribi had previously been found to have taken things from the Decedent without the Decedent's permission. Specifically, a few years prior to this death, Decedent had discovered that Mr. Djeribi, during a visit to New York, had stolen the Decedent's American Express card. When the theft was discovered, Mr. Djeribi was asked to leave by the Decedent and Plaintiff. After the Decedent was in a coma, apparently, Mr. Djeribi came to New York and was in contact with P. Gregory Hess. Without the Decedent's knowledge or consent, Mr. Djeribi was granted permission to stay at the Decedent's apartment for a period of approximately two weeks during which he had full and unmonitored access to the Decedent's Personal Property. Following Mr. Djeribi's stay at the Decedent's apartment, and following the Defendants' otherwise exclusive custody and control of the Decedent's Personal Property following the death of Decedent, it was discovered that certain items were missing.

      n.     Based upon the failure of the Defendants to properly handle, move, care for and maintain the Personal Property of the Decedent, the Personal

Property has been severely damaged and, with regard to certain items, entirely lost due to damage and theft.

55.     In addition to the foregoing, Plaintiff further avers, as against Defendant, Deutsche Bank, as follows: Plaintiff contends that the purported Last Will & Testament of ROGER PRIGENT dated March 22, 2010 and the purported Trust are invalid and unenforceable.  However, to the extent that it should be determined that the Will and Trust are valid and enforceable, and as an alternative basis for actions set forth herein as against Defendant, Deutsche Bank, Plaintiff contends that Defendant, Deutsche Bank, has failed to act in accordance with the provisions of the Trust.

56.     Defendant, Deutsche Bank, as Trustee of the purported Trust, was obligated, among the other obligations set forth in the Trust, to abide by the provisions of Section 5.2, which states, in pertinent part, as follows:

> "Section 5.2 The Trustee shall hold in a separate trust for the benefit of grantor's sister, YVONNE LACKS, all property directed to be held in accordance with this Section 5.2.  The trustee shall dispose of the net income and principal of such trust as follows: (A) The trustee may pay to or apply for the benefit of the grantor's sister none, so much or all of the net income as the trustee deems advisable in its sole judgment and discretion, at any time and from time to time, and to accumulate any net income not so paid and to add the same to principal at least annually.  (B) In addition, the trustee may pay to the grantor's sister or apply for her benefit none, so much or all of the principal of such trust as the trustee, in its sole judgment and discretion, may deem advisable.  **It is the grantor's request that the trustee be liberal in such discretion so that all the needs of the grantor's sister are met, including but not limited to, her health care expenses and the expenses of maintaining her current lifestyle.**  (C) If the grantor's sister should need daily care, she should be accommodated at home, if possible, with the best private care and such costs shall be paid for by the

21

trustee out of the net income and to the extent necessary, out of principal of the trust. If the grantor's sister needs the services of a nursing home because she cannot be accommodated at home, the trustee shall pay out of the net income of the trust and to the extent necessary, out of principal, the costs of a top tier first class facility anywhere, along with whatever private help is needed to properly care for her. (D) It is the grantor's request that the trustee ensure that grantor's sister always has an apartment to live in, including but not limited to the apartment she currently resides in at 225 East 74th Street, New York, New York, even to the extent of purchasing an apartment to be held as part of the trust estate." (Emphasis added herein).

57.    Defendant, Deutsche Bank, failed in its obligations, as Trustee of the purported Trust, in that Deutsche Bank:

a.    Failed to pay to the Plaintiff those amounts required to be paid for her benefit as set forth in the Trust. Even the Guardian Ad Litem said in her report Interim Report and Recommendation of Guardian Ad Litem that Plaintiff's monthly expenses approximate $30,000.00, yet she only receives income from the Trust of approximately $2,500.00 per month in interest. In addition, there were several other expenses paid directly from the Trust to third party creditors for various expenses. However, the amount paid in total is far less than Plaintiff's monthly expenses.

b.    Failed to keep the chain of custody intact regarding the Decedent's Personal Property.

c.    Failed to provide to Plaintiff use of the Decedent's apartment.

d.    Failed to turn over to Plaintiff the Personal Property.

e.    Failed to heed the advice of Plaintiff and Mr. Alberto Barral, the two people with the most (and only) knowledge of the rightful owners of the art,

22

furniture, jewelry, books and memorabilia, and other valuables, and instead claiming that many of the items belonged to the Decedent's business. In reality, approximately 170 of those items not only belonged to the Decedent personally, but to Plaintiff personally, and she has not been allowed to use and enjoy her own personal property. Instead of relying upon the knowledge, expertise, books and records known only to Plaintiff and Mr. Barral, the Trustee apparently relied upon the Decedent's former employee, Lithgow Osborne, to assign ownership of the personal property. Mr. Osborne was actual fired by Decedent and Plaintiff in June 2012, and Decedent would never have wanted Mr. Osborne involved in anything to do with his personal property.

      f.     Failed to provide access to the Personal Property held in the warehouse, many of which belonged to Decedent or Plaintiff personally, many of such items were passed down through their family, and many items were gifts to Plaintiff from her own husband.

      g.     Refusing to release to Plaintiff the Decedent's ashes, despite the fact that Plaintiff had selected a plot in France where she desires to bring her brother's ashes. Despite repeated requests, the Plaintiff has been denied her brother's remains.

      h.     Failing to provide an accounting to Plaintiff. Plaintiff is in need of a complete accounting of both the purported Estate and purported Trust. By way of example only and as further support for the provision of such accountings, upon information and belief, the Decedent had sold his apartment in France for approximately $600,000.00 euros and that money was in a bank in France.

23

Defendant, P. Gregory Hess inquired about the funds, and has heard nothing with regard to such funds.  There remains concern regarding income taxes and other issues surrounding the funds in France, but no response has been provided.

      i.    Failing to make discretionary payments to Plaintiff in accordance with the Trust.  Although the Trustee made some payments to the Plaintiff referred to as "discretionary payments," the Plaintiff is unable to determine what those fees represent.  The Trustee on June 6, 2014, declined to reimburse the Plaintiff for amounts that she spent at restaurants, her salon and dry cleaning.  The Trustee also refused to reimburse the Plaintiff for legal fees, travel related expenses and her personal assistant.  The Trustee stated that the "Discretionary Payment Committee" is giving greater scrutiny to requests for disbursements for expenses that are not essential to Plaintiff's maintenance.  This determination is entirely inconsistent with the express provisions of the Trust.  The Plaintiff's expenses are well in excess of $300,000.00 (exclusive of much of her legal fees) for the time period from the date of death of Decedent to the present.  The Trustee has failed to pay a substantial portion of this total amount.

## COUNT I: LEGAL MALPRACTICE
### [As Against Davidson, Dawson & Clark, LLP & P. Gregory Hess]

Plaintiff incorporates, by reference those factual allegations as contained within the "Facts Common to All Causes of Action" as if fully realleged herein, and further avers:

58.    At all times material hereto, Davidson, Dawson & Clark, LLP and P. Gregory Hess (hereinafter in this cause of action referred to collectively as

"Defendants"), undertook the obligations associated with acting in the capacity as attorneys for Decedent, Decedent's Probate Estate and Decedent's Trust.

59.     At all times material hereto, Defendants were obligated to act with ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession with regard to the advice, actions, services and products provided to Decedent.

60.     Based upon the foregoing, Defendants failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession with regard to the advice, actions, services and products provided to Decedent.

61.     Based upon the foregoing, Defendants breached their duty to the Decedent.

62.     Based upon the foregoing, Defendants proximately caused Decedent to sustain actual and ascertainable damages.

WHEREFORE, Plaintiff demands a judgment for damages as against Defendants, the imposition of prejudgment and post judgment interest on all damages awarded, an award of her costs of suit, a jury trial on all issues so triable, and such other and further relief as this Court may deem just and proper.

## COUNT II: BREACH OF FIDUCIARY DUTY
### [As Against Davidson, Dawson & Clark, LLP & P. Gregory Hess]

Plaintiff incorporates, by reference those factual allegations as contained within the "Facts Common to All Causes of Action" as if fully realleged herein, and further avers:

25

63.     At all times material hereto, Davidson, Dawson & Clark, LLP and P. Gregory Hess (hereinafter in this cause of action referred to collectively as "Defendants"), held a position of trust and confidence with the Decedent.

64.     At all times material hereto, based upon the Defendants' position of trust and confidence with the Decedent, the Decedent depended upon the Defendants, and the Defendants undertook to advise, counsel, protect and influence the Decedent.

65.     Based upon the foregoing, the Defendants abused their position of trust and betrayed their position of confidence.

66.     Based upon the foregoing, Defendants proximately caused actual and ascertainable damages to Decedent, and, in turn, to Plaintiff.

WHEREFORE, Plaintiff demands a judgment for damages as against Defendants, the imposition of prejudgment and post judgment interest on all damages awarded, an award of her costs of suit, a jury trial on all issues so triable, and such other and further relief as this Court may deem just and proper.

## COUNT III: BREACH OF FIDUCIARY DUTY
### [As Against Jonathan Kass]

Plaintiff incorporates, by reference those factual allegations as contained within the "Facts Common to All Causes of Action" as if fully realleged herein, and further avers:

67.     At all times material hereto, Jonathan Kass (hereinafter in this cause of action referred to collectively as "Defendant"), held a position of trust and confidence with the Decedent.

26

68.     At all times material hereto, based upon the Defendant's position of trust and confidence with the Decedent, the Decedent depended upon the Defendant, and the Defendant undertook to advise, counsel, protect and influence the Decedent.

69.     Based upon the foregoing, the Defendant abused his position of trust and betrayed his position of confidence.

70.     Based upon the foregoing, Defendant proximately caused actual and ascertainable damages to Decedent, and, in turn, to Plaintiff.

WHEREFORE, Plaintiff demands a judgment for damages as against Defendant, the imposition of prejudgment and post judgment interest on all damages awarded, an award of her costs of suit, a jury trial on all issues so triable, and such other and further relief as this Court may deem just and proper.

## COUNT IV: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### [As Against Bank of America, N.A., as successor in interest to Merrill Lynch Bank & Trust Co., FSB; and Deutsche Bank Trust Company, N.A., as Successor Trustee of Roger Prigent 2010 Revocable Trust dated March 22, 2010, and Jonathan Kass]

Plaintiff incorporates, by reference those factual allegations as contained within the "Facts Common to All Causes of Action" as if fully realleged herein, and further avers:

71.     At all times material hereto, Bank of America, N.A., as successor in interest to Merrill Lynch Bank & Trust Co., FSB; and Deutsche Bank Trust Company, N.A., as Successor Trustee of Roger Prigent 2010 Revocable Trust dated March 22, 2010, and Jonathan Kass (hereinafter in this cause of action referred to collectively as "Defendants"), were aware of the fact that Davidson, Dawson & Clark, LLP and P.

Gregory Hess, as attorneys for the Decedent, held a position of trust and confidence with the Decedent.

72.    At all times material hereto, based upon the Davidson, Dawson & Clark, LLP's and P. Gregory Hess', position of trust and confidence with the Decedent, the Decedent depended upon Davidson, Dawson & Clark, LLP and P. Gregory Hess, and Davidson, Dawson & Clark, LLP and P. Gregory Hess undertook to advise, counsel, protect and influence the Decedent.

73.    Based upon the foregoing, Davidson, Dawson & Clark, LLP and P. Gregory Hess abused their position of trust and betrayed their position of confidence.

74.    Based upon the foregoing, Defendants engaged in actions that substantially assisted Davidson, Dawson & Clark, LLP and P. Gregory Hess in effecting the breach of fiduciary duty.

75.    Based upon the foregoing, Defendants proximately caused actual and ascertainable damages to Decedent, and, in turn, to Plaintiff.

WHEREFORE, Plaintiff demands a judgment for damages as against Defendants, the imposition of prejudgment and post judgment interest on all damages awarded, an award of her costs of suit, a jury trial on all issues so triable, and such other and further relief as this Court may deem just and proper.

### COUNT V: BREACH OF FIDUCIARY DUTY
### [As Against Bank of America, N.A., as successor in interest to Merrill Lynch Bank & Trust Co., FSB; and Deutsche Bank Trust Company, N.A., as Successor Trustee of Roger Prigent 2010 Revocable Trust dated March 22, 2010]

28

Plaintiff incorporates, by reference those factual allegations as contained within the "Facts Common to All Causes of Action" as if fully realleged herein, and further avers:

76.     At all times material hereto, Bank of America, N.A., as successor in interest to Merrill Lynch Bank & Trust Co., FSB; and Deutsche Bank Trust Company, N.A., as Successor Trustee of Roger Prigent 2010 Revocable Trust dated March 22, 2010 (hereinafter in this cause of action referred to collectively as "Defendant"), held a position of trust and confidence with the Decedent.

77.     At all times material hereto, based upon the Defendant's position of trust and confidence with the Decedent, the Decedent depended upon the Defendant, and the Defendant undertook to advise, protect and influence the Decedent.

78.     Based upon the foregoing, the Defendant abused its position of trust and betrayed their position of confidence.

79.     Based upon the foregoing, Defendant proximately caused actual and ascertainable damages.

WHEREFORE, Plaintiff demands a judgment for damages as against Defendant, the imposition of prejudgment and post judgment interest on all damages awarded, an award of her costs of suit, a jury trial on all issues so triable, and such other and further relief as this Court may deem just and proper.

### COUNT VI: NEGLIGENCE
#### [As Against Davidson, Dawson & Clark, LLP & P. Gregory Hess—Lost or Stolen Personal Property]

29

Plaintiff incorporates, by reference those factual allegations as contained within the "Facts Common to All Causes of Action" as if fully realleged herein, and further avers:

80.     At all times material hereto, Davidson, Dawson & Clark, LLP and P. Gregory Hess (hereinafter in this cause of action referred to collectively as "Defendants"), being entrusted with and having assumed possession and control of the Decedent's Personal Property, while the Decedent was in a coma and following the death of the Decedent, had a duty to act with reasonable care to protect and preserve the Decedent's Personal Property.

81.     Based upon the foregoing, the Defendants breached their duty to the Decedent by entrusting the Personal Property of the Decedent to Mr. Roger Djeribi (aka Geribi), to various other independent contractors and other persons, all of which had unmonitored access to the Personal Property of Decedent, (a) without having first conducted an appropriate inventory to ensure a full and complete list of all items of Personal Property, (b) without having safeguards in place to ensure that none of the Personal Property would be stolen, and (c) without doing those things necessary to ensure that items of Personal Property would not be stolen or misappropriated.

82.     Based upon the foregoing, Defendants breached their duty to the Decedent and his Estate.

83.     Based upon the foregoing, the Decedent and his Estate sustained actual and ascertainable damages.

WHEREFORE, Plaintiff demands a judgment for damages as against Defendants, the imposition of prejudgment and post judgment interest on all damages awarded, an

award of her costs of suit, a jury trial on all issues so triable, and such other and further relief as this Court may deem just and proper.

## COUNT VII: NEGLIGENCE
### [As Against Davidson, Dawson & Clark, LLP & P. Gregory Hess—Damaged Personal Property]

Plaintiff incorporates, by reference those factual allegations as contained within the "Facts Common to All Causes of Action" as if fully realleged herein, and further avers:

84.     At all times material hereto, Davidson, Dawson & Clark, LLP and P. Gregory Hess (hereinafter in this cause of action referred to collectively as "Defendants"), being entrusted with and having assumed possession and control of the Decedent's Personal Property, while the Decedent was in a coma and following the death of the Decedent, had a duty to act with reasonable care to protect and preserve the Decedent's Personal Property.

85.     Based upon the foregoing, the Defendants breached their duty to the Decedent by failing to use reasonable care to protect and preserve the Decedent's Personal Property.

86.     Based upon the foregoing, the Decedent sustained actual and ascertainable damages.

WHEREFORE, Plaintiff demands a judgment for damages as against Defendants, the imposition of prejudgment and post judgment interest on all damages awarded, an award of her costs of suit, a jury trial on all issues so triable, and such other and further relief as this Court may deem just and proper.

## COUNT VIII: NEGLIGENCE

31

**[As Against Bank of America and Deutsche Bank]**

Plaintiff incorporates, by reference those factual allegations as contained within the "Facts Common to All Causes of Action" as if fully realleged herein, and further avers:

87.     At all times material hereto, Bank of America and Deutsche Bank (hereinafter in this cause of action referred to collectively as "Defendants"), being entrusted with and having assumed possession and control of the Decedent's Personal Property, following the death of the Decedent, had a duty to act with reasonable care to protect and preserve the Decedent's Personal Property.

88.     Based upon the foregoing, the Defendants breached their duty to the Decedent and Decedent's Estate by failing to use reasonable care to protect and preserve the Decedent's Personal Property.

89.     Based upon the foregoing, the Decedent sustained actual and ascertainable damages.

WHEREFORE, Plaintiff demands a judgment for damages as against Defendants, the imposition of prejudgment and post judgment interest on all damages awarded, an award of her costs of suit, a jury trial on all issues so triable, and such other and further relief as this Court may deem just and proper.

### COUNT IX: BREACH OF TRUST
**[Alternative Cause of Action As Against Deutsche Bank Only In The Event That The Purported Trust Is Determined To Be Valid And Enforceable]**

Plaintiff incorporates, by reference those factual allegations as contained within the "Facts Common to All Causes of Action" as if fully realleged herein, and further avers:

90.     At all times material hereto, Deutsche Bank (hereinafter in this cause of action referred to collectively as "Deutsche Bank"), was Trustee for the purported Trust, and had obligations to Plaintiff as set forth in the Trust.

91.     Based upon the foregoing, Deutsche Bank has breached the Trust by failing to pay to Plaintiff those amounts specifically set forth in the Trust.

92.     Based upon the foregoing, the Plaintiff has sustained actual and ascertainable damages.

WHEREFORE, Plaintiff demands a judgment for damages as against Defendants, the imposition of prejudgment and post judgment interest on all damages awarded, an award of her costs of suit, a jury trial on all issues so triable, and such other and further relief as this Court may deem just and proper.

### COUNT X: FRAUD
### [As Against Davidson, Dawson & Clark, LLP, P. Gregory Hess, Bank of America and Jonathan Kass]

Plaintiff incorporates, by reference those factual allegations as contained within the "Facts Common to All Causes of Action" as if fully realleged herein, and further avers:

93.     Davidson, Dawson & Clark, LLP, P. Gregory Hess, Bank of America, and Jonathan Kass (hereinafter in this cause of action referred to collectively as "Defendants"), made false representations of fact and material omissions of information when dealing with the Decedent.

94.     At all times material hereto, the Defendants had knowledge of the false representations and material omissions.

33

95.     The Defendants made the false representations and material omissions in order to induce the Decedent's reliance.

96.     The Decedent justifiably relied upon the false representations and material omissions made by the Defendants.

97.     Based upon the foregoing, Defendants caused damage to the Decedent, and, in turn, to Plaintiff.

WHEREFORE, Plaintiff demands a judgment for damages as against Defendants, the imposition of prejudgment and post judgment interest on all damages awarded, an award of her costs of suit, a jury trial on all issues so triable, and such other and further relief as this Court may deem just and proper.

Dated: August 15, 2016          Respectfully,

THE ANDERSEN FIRM
A Professional Corporation


/s/ Sean P. Sheppard
WILLIAM E. ANDERSEN
Florida Bar #96849
SEAN P. SHEPPARD, Of Counsel
Florida Bar #67253
Attorneys for Plaintiff
500 E. Broward Blvd., Suite 1600
Fort Lauderdale, FL 33394
Telephone: 866-230-2206
Fax: 877-773-1433
Primary: sean@sheppardfirm.com
Secondary: jgula@theandersenfirm.com

34

Filing # 45198393 E-Filed 08/15/2016 09:46:33 AM



## LAST WILL AND TESTAMENT

### OF

### ROGER PRIGENT

I, ROGER PRIGENT, domiciled in the City, County and State of New York, do hereby declare this to be my Last Will and Testament, hereby revoking all my former Wills and Codicils.

FIRST:   I give my entire estate, real and personal, including any lapsed gifts, to the trustee acting at my death of the ROGER PRIGENT 2010 REVOCABLE TRUST created by me, as grantor and as trustee, bearing the same date as this Will (hereinafter the "ROGER PRIGENT 2010 REVOCABLE TRUST"), to be added to, held, administered and distributed as a part thereof.

SECOND:   (A)  I appoint MERRILL LYNCH BANK & TRUST CO., FSB as executor of this, my Last Will and Testament.

(B)  Any executor at any time in office is authorized, at any time and from time to time, by an instrument in writing, signed and acknowledged, to appoint an individual or a series of individuals or a bank or trust company to act as an executor in succession to itself, himself or herself.   In the event of any conflict as to which appointment is applicable, the most recently dated instrument shall be given effect.

(C)  Any executor may at any time resign as such by an instrument in writing signed and acknowledged in duplicate, one

EXHIBIT

A



counterpart of which shall be filed in the Court in which this Will shall be admitted to probate and the other of which shall be delivered to the next successor executor, if any, as the case may be.

(D) Whenever the word "executor" is used herein, it shall refer to the executor or successor executor from time to time acting as the context may require.

(E) All powers, authorities and discretions herein conferred upon my executor named herein shall vest in and may be exercised by any additional, successor or substitute executor appointed pursuant to the provisions hereof as though originally named herein.

(F) I direct that no bond or other security be required of any executor named herein or appointed in accordance with the provisions herewith for the faithful performance of her or his duties in any capacity in any jurisdiction.

(G) MERRILL LYNCH BANK & TRUST CO., FSB shall receive payment for its services in accordance with its schedule of rates in effect at the time such compensation becomes payable.

THIRD: In amplification or addition to the powers granted by law and not in limitation thereof, I authorize my executor in its discretion and without prior authority from any court:

(a) To sell, exchange or otherwise dispose of, and to lease, for any period of time without regard to legal restrictions otherwise applicable, any property, real or personal, at such times and upon such terms as it shall deem advisable;

(b) To retain, and to invest and reinvest in, such common stocks, preferred stocks, bonds, other securities and other property, real or personal, including interests in investment trusts and common trust funds, as it shall deem advisable, whether or not any such property is diversified or is qualified by law for fiduciary investment;

(c) To exercise (by purchase, subscription, conversion or otherwise) or to sell or to waive any options, rights, warrants or other privileges exercisable by it;

(d) To make distribution wholly or partly in cash or in kind;

(e) To vote in person or by proxy with respect to any security; to consent to or dissent from any plan for consolidation, merger, reorganization, recapitalization or liquidation, or other plan, with respect to any security;

(f) To register, transfer or hold any stocks, bonds or other securities in the name or names of any nominee chosen by it but with full responsibility in its fiduciary capacity;

(g) To compromise claims made by or against it;

(h) To employ or retain such custodians, accountants, investment counsel, legal counsel, and such other agents and advisers, including any firm with which any fiduciary hereunder may be in any way affiliated, as it shall deem advisable and to delegate authority (including investment authority) thereto, and to compensate them from the funds of my estate;

(i) To borrow money from any person or corporation (including any executor), whether or not upon the security of any real or personal property

held hereunder, for the purposes of my estate and upon such terms as it shall deem advisable;

(j) To elect to claim certain administration and other expenses as deductions either in the income tax returns of my estate or in the estate tax return when permitted by law, regardless of the effect of such elections upon the interests of any beneficiary under this Will and without adjustment therefor among such beneficiaries;

(k) To allocate any receipt (including distributions by a corporation or association in the form of a stock split or a stock dividend, regardless of the rate thereof) and any expenditure between principal and income, or wholly to one or the other, in such manner as it sees fit, the crediting or charging of any portion or all of any such receipt or expenditure to income or principal at any time and from time to time to be binding upon all persons interested in my estate;

(l) To make any adjustment to basis authorized by law, including but not limited to increasing the basis of any property included in my gross estate, whether or not passing under my will, by allocating any amount by which the basis of assets may be increased. My executor shall be under no duty and shall not be required to allocate basis increase exclusively, primarily or at all to assets passing under this Will as opposed to other property included in my gross estate. I waive any such duty that otherwise would exist. Any such allocation shall not cause my executors to be liable to any person or to be subject to removal or forfeiture or commissions or other compensation;

(m) To elect, in the exercise of sole and absolute discretion and without permission of any court or other authority, to allocate basis increases to one or more of all assets that any executor receives or in which the executor has a personal interest to the partial or total exclusion of other assets with respect to which the election could be made. Any such allocation shall not cause my executor

to be liable to any person or to be subject to removal
or forfeiture of commissions; and

(n) To dispense with service on any person
under a disability where a party to the proceeding
(not under a disability) has the same interest as the
person under disability in any proceeding relating to
my estate.

FOURTH: All estate, transfer, inheritance and
succession taxes, and any interest and penalties thereon
imposed by any state, federal, or in my executor's discretion,
foreign laws, with respect to property passing under this Will
or any Codicil thereto, any property passing under any revocable
trust established by me, and any property passing pursuant to a
qualified retirement plan, profit sharing plan or individual
retirement account and any trust property which shall be
includible in my gross estate pursuant to Section 2044 of the
Code, with respect to which I specifically waive any right of
recovery under Section 2207A of the Code, (excluding, however,
any such tax on generation skipping transfers which may be
imposed under Chapter 13 of the Code, or a corresponding
provision of state law), shall be paid from the principal of the
ROGER PRIGENT 2010 REVOCABLE TRUST, as provided therein, as an
expense of administration, and such taxes and duties shall not
be charged to or apportioned against the persons who have
received or have become entitled to such property under the



provisions of this Will or the ROGER PRIGENT REVOCABLE LIVING

TRUST.

IN WITNESS WHEREOF, I, ROGER PRIGENT, have hereunto

set my hand and seal this 22 day of March, 2010.

This Will was signed by the testator in
our presence together on the day it is
dated, and he declared it to be his Will
and requested that we be attesting
witnesses.

_____ residing at 174 Nassau Blvd
                            Garden City NY 11530

_____ residing at 47 Quaker Bridge Road
                            Ossining, NY 10562

STATE OF NEW YORK      )
                       )  SS.:
COUNTY OF NEW YORK     )

     Each of the undersigned, individually and severally being duly sworn, says:

     The annexed Will was subscribed in our presence and sight at the end thereof by ROGER PRIGENT, the within named testator, on *MARCH 22* , 2010, at *343 E 74 St* , New York, New York.

     The testator, at the time of making such subscription, declared the instrument so subscribed to be his Last Will. Each of the undersigned thereupon signed his or her name as a witness at the end of the said Will at the request of the testator and in his presence and sight and in the presence and sight of each other.

     The testator was, at the time of so executing the said Will, over the age of 18 years and, in the respective opinions of the undersigned, of sound mind, memory and understanding and not under any restraint or in any respect incompetent to make a Will.

     The testator, in the respective opinions of the undersigned, could read, write and converse in the English language and was suffering from no defect of sight, hearing or speech, or from any other physical or mental impairment which would affect his capacity to make a valid Will. The Will was executed as a single, original instrument and was not executed in counterparts. Each of the undersigned was acquainted with the testator at such time and makes this affidavit at his request.

     The annexed original Will was shown to the undersigned at the time this affidavit was made, and was examined by each of them as to the signature of the testator and of the undersigned.

     The foregoing instrument was executed by the testator and witnessed by each of the undersigned affiants under the supervision of *P. GREGORY HESS* , an attorney-at-law.

Sworn to before me this *22* day of *March* , 2010.

_____
Notary Public

DOROTHY SCHREIBER
NOTARY PUBLIC, State of New York
No. 01SC6081903
Qualified in Queens County
Certificate Filed in New York County
Commission Expires May 31, 2011

259120-1/8320-00001

Filing # 45198393 E-Filed 08/15/2016 09:46:33 AM

# ROGER PRIGENT 2010 REVOCABLE TRUST

dated: *March 22*, 2010

between

ROGER PRIGENT,

as grantor,

and

ROGER PRIGENT,

as trustee.

EXHIBIT

*B*

250685-1/8320-00001

# TABLE OF CONTENTS

Page

ARTICLE I PROPERTY SUBJECT TO THIS TRUST ..................... 1

ARTICLE II REVOCATION AND AMENDMENT .......................... 2

ARTICLE III RIGHTS RESERVED BY THE GRANTOR OR CONFERRED UPON
        OTHERS ............................................... 3

ARTICLE IV DISTRIBUTIONS DURING THE LIFE OF GRANTOR .......... 3

ARTICLE V DISTRIBUTIONS FOLLOWING THE DEATH OF THE GRANTOR .... 5

ARTICLE VI ASSIGNMENT OF INCOME AND PRINCIPAL ............... 12

ARTICLE VII PAYMENT OF TAXES ON THE GRANTOR'S DEATH ......... 13

ARTICLE VIII POWERS OF THE TRUSTEE .......................... 14

ARTICLE IX SUCCESSOR TRUSTEES ............................... 18

ARTICLE X COMMISSIONS ....................................... 20

ARTICLE XI ACCOUNTINGS ...................................... 21

ARTICLE XII GENERAL PROVISIONS .............................. 22

252533-2/8320-00001

ROGER PRIGENT 2010 REVOCABLE TRUST

THIS TRUST AGREEMENT, dated this 22 day of MARCH , 2010, is between ROGER PRIGENT, currently residing in New York, New York, as grantor (hereinafter called the "grantor"), and said ROGER PRIGENT, as trustee (hereinafter called the "trustee").

The grantor declares that all property which shall become subject to this trust shall be held, managed and distributed by the trustee as hereinafter provided.

This Agreement and the trust hereby created may be referred to as the "ROGER PRIGENT 2010 REVOCABLE TRUST".

## ARTICLE I

### PROPERTY SUBJECT TO THIS TRUST

The grantor hereby transfers, assigns and conveys all of his right, title and interest in and to the assets described in the attached Schedule A to this Agreement. All such property, as well as any other property which may hereafter be transferred, assigned or conveyed to the trustee hereunder by the grantor or others shall constitute the trust estate.

252633-2/8320-00001

-1-

## ARTICLE II

### REVOCATION AND AMENDMENT

Section 2.1    This Agreement and the trust created hereby may be amended or revoked in whole or in part by the grantor, at any time and from time to time during his lifetime, by an acknowledged written instrument.

Section 2.2    During the lifetime of the grantor, a guardian of the person or property of the grantor or a holder of a durable general power of attorney shall not by virtue of such office have the power to exercise any power to amend or to revoke this Agreement or the trust created hereby or to direct or otherwise to control the trustee in any respect; provided, however, that a court of competent jurisdiction may authorize such amendment, revocation, or direction by a guardian if said court is satisfied by clear and convincing evidence that the grantor desires such amendment, revocation, or direction and is competent to understand such amendment, revocation, or direction.

Section 2.3    Upon the death of the grantor, this trust shall become irrevocable and it may not be amended thereafter.

## ARTICLE III

RIGHTS RESERVED BY THE GRANTOR OR CONFERRED UPON OTHERS

Section 3.1    Except as otherwise provided herein, the grantor or any other person may, by Will or other conveyance, add to this Trust such property which is acceptable to the trustee.

## ARTICLE IV

DISTRIBUTIONS DURING THE LIFE OF GRANTOR

Section 4.1    The trustee shall pay to or for the benefit of the grantor so much or all of the net income as the grantor directs from time to time, either orally or in a writing signed by him.   In addition, the trustee shall pay so much or all of the net income of the trust to or for the benefit of the grantor during his lifetime as the trustee deems advisable in his or its discretion, and shall accumulate the balance, if any, of such net income not so paid in any year and add the same to principal at least annually, or, in the trustee's discretion, shall accumulate and add to principal the entire net income in any year.

Section 4.2    The trustee shall pay to or for the benefit of the grantor from the principal of the trust such sums as the grantor directs from time to time, either orally or in a writing signed by him, up to the whole thereof.   In addition,

258685-1/8320-00001

-3-

the trustee shall pay so much or all of the principal of the trust to or for the benefit of the grantor during his lifetime as the trustee deems advisable in his or its discretion, for the grantor's health, support and other needs and desires.

Section 4.3    The grantor may, at any time or times, direct the trustee either orally or in writing to invest the principal of the trust in specific properties or investments; to retain as part of the principal of the trust any properties or investments at any time held hereunder, for such length of time as such directions may provide; or to sell, encumber, lease, manage, control or dispose of any property held as part of the principal of the trust.  The trustee shall not be liable for any loss sustained or incurred by reason of the trustee's compliance with any such written directions of the grantor.  The trustee shall have no duty to review, initiate actions or make recommendations with respect to any such securities, properties or investments directed by the grantor except as the trustee expressly agrees in writing with the grantor.

Section 4.4  During the term of trust, the grantor's sister, YVONNE LACKS, shall continue to have the power to sell antiques and tangible personal property on behalf of the trust and to retain the services of an assistant; including but not

limited to Lithgow Osborne, for such purposes and at the trust's expense.

## ARTICLE V

## DISTRIBUTIONS FOLLOWING THE DEATH OF THE GRANTOR

Section 5.1  Upon the grantor's death, the trust shall terminate and the remaining principal of the trust and any accumulated and undistributed income, including the proceeds of any insurance, any residential real property and any other property (including, without limitation, any Retirement Plan) shall be distributed as follows:

(A)  The grantor's furniture, furnishings, books, works of art and all other articles of household use or ornament and all of the grantor's jewelry and clothing shall distributed as follows:

(1)  The portrait of Diana Vreeland by Vertes (currently in the possession of Katell Le Bourhis) shall be distributed to KATELL LeBOURHIS, currently residing at 9 Rue Chomel, Paris, France 75007, if she survives the grantor;

(2)  The white marble bust of Roman Warrior with helmet (currently in the office at 343 East 74th Street, New York, New York) to JACQUES GRANGE and PIERRE PASSEBON, residing at 9 Rue de Beaujolais, Paris, France  75001, in equal shares,

or all to the survivor of them, if only one of them survives the grantor;

      (3)  The champagne ice bucket from the ship "Normandie" to MATTHEW PATRICK SMYTH, residing at 115 East 72nd Street, New York, New York 10021, if he survives the grantor;

      (4)  Two small ebonized tables and a pair of chairs in white silk by Gerard Mille (currently located in the den at 343 East 74th Street, New York, New York) to CHRISTIAN ODASSO, residing at 201 West Indies Drive, Palm Beach, Florida 33480, if he survives the grantor;

      (5)  Two or three large silver trays (currently located in the dining room at 343 East 74th Street, New York, New York) to JACQUELINE COUMANS, residing at 21 East 92nd Street, New York, New York, if she survives the grantor;

      (6)  The large painting of Carlotta Monterey by Abram Poole, 51" wide by 80" high, including frame (currently located in the office at 343 East 74th Street, New York, New York) to the MUSEUM OF THE CITY OF NEW YORK, located at 1220 Fifth Avenue, New York, New York;

      (7)  The monumental white marble bust of Napoleon by Canova, to the METROPOLITAN MUSEUM OF ART, located at 1000 Fifth Avenue, New York, New York;

(8) . The large painting depicting part of Brittany (St. Anne la Palud) by Ch. Cotte (Ecole du Pont Aven), 82 ½" wide by 64" high, (currently located in the office at 343 East 74th Street, New York, New York) to PIERRE HARDY and FRANCOISE HARDY, residing at 11 Rue Carnot, Rennes France 35700, in equal shares, or all to the survivor, if only one of them survives the grantor; and

(9) If the grantor's sister, YVONNE LACKS, survives the grantor, the balance of the grantor's tangible personal property shall be distributed to her. :

(10) If the grantor's sister does not survive the grantor, the balance of such tangible personal property shall be sold and the net proceeds of sale shall be added to the balance of the trust and disposed of in accordance with subdivision "(D)" of this Section 5.1. The grantor suggests and requests that when liquidating any art, sculpture or other tangible personal property, the trustee engage the services of Christie's.

(B) The trustee shall distribute the sum of Five Hundred Thousand Dollars ($500,000) to BILLY and SUZANNE CAMPBELL, residing in Colebrook, Connecticut, in equal shares, or all to the survivor of them, if only one of them survives the grantor, with the request by the grantor that such sum be used

for the purchase of a primary or secondary residence in the United States.

(C)  If the grantor's sister, YVONNE LACKS, survives him, the balance of the trust property, after providing for the dispositions set forth in subdivisions "(A)" and "(B)" of this Section 5.1 shall be held by the trustees as a separate trust for the benefit of the grantor's sister, YVONNE LACKS, upon the terms and conditions set forth in Section 5.2 of this Agreement.

(D)  If the grantor's sister, YVONNE LACKS, does not survive the grantor, the balance of the trust property, after providing for the dispositions set forth in subdivisions "(A)" and "(B)" of this Section 5.1 shall be distributed as follows:

(1)  One Hundred Thousand Dollars ($100,000) shall be distributed to LITHGOW OSBORNE, provided that he survives the grantor and was working closely with the family at the time of the grantor's death.

(2)  One Hundred Thousand Dollars ($100,000) shall be distributed to WENDY GOODMAN, if she survives the grantor.

(3)  One Hundred Thousand Dollars ($100,000) shall be distributed per stirpes to the issue who survive the grantor of Jonathan Kass.  Any distribution under this paragraph may be made under the Uniform Transfers to Minors Act or to a 529 plan, in the sole discretion of the trustee.

(4)   After providing for the dispositions set forth in paragraphs "(1)" through "(3)", the remaining trust property shall be distributed as follows:

(a)   Twenty-five percent (25%) thereof shall be distributed to PIERRE HARDY and FRANCOISE HARDY, in equal shares, or all to the survivor, if only one of them survives the grantor;

(b)   Twenty-five percent (25%) thereof shall be distributed to ANICK PRIGENT FLAMEL and PIERRE FLAMEL, in equal shares, or all to the survivor, if only one of them survives the grantor;

(c)   Twenty-five percent (25%) thereof shall be distributed to MEMORIAL SLOAN-KETTERING CANCER CENTER, of New York, New York, for its general purposes; and

(d)   Twenty-five percent (25%) thereof shall be distributed to THE GLAUCOMA RESEARCH INSTITUTE, at the New York Eye and Ear Infirmary, of New York, New York, for Dr. Ronald Gentile for his retina research.

Section 5.2   The trustee shall hold in a separate trust for the benefit of grantor's sister, YVONNE BACKS, all property directed to be held in accordance with this Section 5.2.   The trustee shall dispose of the net income and principal of such trust as follows:

(A)   The trustee may pay to or apply for the benefit of the grantor's sister none, so much or all of the net income as the trustee deems advisable in its sole judgment and discretion, at any time and from time to time, and to accumulate any net income not so paid and to add the same to principal at least annually.

(B)   In addition, the trustee may pay to the grantor's sister or apply for her benefit none, so much or all of the principal of such trust as the trustee, in its sole judgment and discretion, may deem advisable.   It is the grantor's request that the trustee be liberal in such discretion so that all the needs of the grantor's sister are met, including but not limited to, her health care expenses and the expenses of maintaining her current lifestyle.

(C)   If the grantor's sister should need daily care, she should be accommodated at home, if possible, with the best private care and such costs shall be paid for by the trustee out of the net income and to the extent necessary, out of principal of the trust.   If the grantor's sister needs the services of a nursing home because she cannot be accommodated at home, the trustee shall pay out of the net income of the trust and to the extent necessary, out of principal, the costs of a top tier

first class facility anywhere, along with whatever private help is needed to properly care for her.

(D) It is the grantor's request that the trustee ensure that grantor's sister always has an apartment to live in, including but not limited to the apartment she currently resides in at 225 East 74th Street, New York, New York, even to the extent of purchasing an apartment to be held as part of the trust estate.

(E) On the death of the grantor's sister the trust shall terminate and the trustee shall distribute the remaining trust principal, if any, as follows:

(1) One Hundred Thousand Dollars ($100,000) shall be distributed to LITHGOW OSBORNE, provided that he survives the grantor's sister and was working closely with the family at the time of the grantor's sister's death.

(2) One Hundred Thousand Dollars ($100,000) shall be distributed to WENDY GOODMAN, if she survives the grantor's sister.

(3) One Hundred Thousand Dollars ($100,000) shall be distributed per stirpes to the issue who survive the grantor's sister of Jonathan Kass. Any distribution under this paragraph may be made under the Uniform Transfers to Minors Act or to a 529 plan, in the sole discretion of the trustee.

(4)  After providing for the dispositions set forth in paragraphs "(1)" through "(3)", the remaining trust property shall be distributed as follows:

(a)  Twenty-five percent (25%) thereof shall be distributed to PIERRE HARDY and FRANCOISE HARDY, in equal shares, or all to the survivor, if only one of them survives the grantor's sister;

(b)  Twenty-five percent (25%) thereof shall be distributed to ANICK PRIGENT FLAMEL and PIERRE FLAMEL, in equal shares, or all to the survivor, if only one of them survives the grantor's sister;

(c)  Twenty-five percent (25%) thereof shall be distributed to MEMORIAL SLOAN-KETTERING CANCER CENTER, of New York, New York, for its general purposes; and

(d)  Twenty-five percent (25%) thereof shall be distributed to THE GLAUCOMA RESEARCH INSTITUTE, at the New York Eye and Ear Infirmary, of New York, New York, for Dr. John Tile for his retina research.

## ARTICLE VI
### ASSIGNMENT OF INCOME AND PRINCIPAL

Section 6.1   No   assignment,   pledge   or   other alienation, voluntary or involuntary, of the interest of any beneficiary in the income or principal of any trust created

258685-1/8320-00001

-12-

hereunder shall be valid. Such income and principal shall in all cases be paid directly to or applied for the benefit of the person entitled to receive the same under the terms and provisions hereof, or be deposited for the account of such person in a bank, without regard to such alienation, and both the income and the principal of any such trust while in the hands of the trustee shall, to the full extent permitted by law, be exempt from attachment, trustees process, garnishment or other legal proceedings or process.

ARTICLE VII

PAYMENT OF TAXES ON THE GRANTOR'S DEATH

If the grantor's sister survives the grantor, the trustee shall pay out of that portion of the trust estate passing pursuant to paragraph "(2)" of subdivision "(B)" of Section 5.1 of this Agreement or if the grantor's sister does not survive the grantor, out of that portion passing pursuant to paragraph "(2)" of subdivision "(C)" of Section 5.1 of this Agreement, all estate, transfer, inheritance and succession taxes, and any interest and penalties thereon, imposed by any state, federal or, in the trustee's discretion, foreign laws with respect to property included in the grantor's taxable estate (excluding, however, any such tax on generation skipping transfers which may be imposed under Chapter 13 of the Internal

Revenue Code of 1986, as amended (the "Code"), or a corresponding provision of state law), as an expense of administration and such taxes and duties shall not be charged to or apportioned against the persons who have received or have become entitled to such property under the provisions of this Agreement or otherwise as a result of the grantor's death.

## ARTICLE VIII

### POWERS OF THE TRUSTEE

Section 8.1    The trustee in respect of any and all property which shall at any time constitute part of any trust created hereunder shall have the following powers, authority and discretion, without limitation of the powers otherwise conferred upon the trustee by law, all of which are to continue until the termination of any trust herein created and the final distribution thereof:

(a)  To retain, and to invest and reinvest in, such common stocks, preferred stocks, bonds, other securities and other property, real or personal, including interests in investment trusts and common trust funds and mutual funds as he or it deems advisable, whether or not any such property is diversified or is otherwise qualified by law for fiduciary investment.

(b)  To sell such property at public or private sale and on such terms and conditions as the trustee, in his or its sole judgment and discretion, shall determine to be advisable, or to convey, mortgage, pledge, lease or grant options for the sale of such property for such term as the trustee may deem advisable, even though such term may exceed the period of the administration of any trust herein created or the

period otherwise permitted by law; to release, exchange or in any other way to dispose of the whole or any part of any trust herein created upon such terms and conditions as to the trustee may seem proper and desirable, and for such purpose to execute, acknowledge and deliver any and all instruments under seal or otherwise which may be required.

(c)  To acquire by purchase or exchange property of any character, real or personal, including, but without limiting the generality of the foregoing, bonds, notes, debentures, mortgages, certificates of deposit, common and preferred stocks, shares or interests in any investment trust or common trust fund or mutual fund, and any tangible or intangible personal property, without being limited to the class of securities in which trustees are authorized by law or any rule of court to invest trust funds.

(d)  To collect and receive any and all sums and any and all property of whatsoever kind or nature due or owing or belonging to any trust created hereunder, and to give full discharge and acquittance therefor.

(e)  To extend the time of payment of any obligation held by the trustee and to compromise, settle or submit to arbitration upon such terms as to the trustee may seem proper, or to release, any claim in favor of or against the trust created hereunder.

(f)  To consent to and to participate in and to vote in person or by proxy upon any action affecting the corporate structure of any corporation in which any trust created hereunder shall be interested in the same manner as an individual owner might or could do in his own right.

(g)  To borrow money from any person, firm, corporation or other entity, including any trustee, for the purpose of meeting any and all charges against any trust created hereunder or for any other purpose connected with the administration, preservation, improvement or enhancement in value of any trust created hereunder, and in connection therewith, to pledge, mortgage or hypothecate any part or all of the assets held by the trustee as security for repayment of sums borrowed.

(h)  To continue to hold as part of the trust any interest which the trustee may at any time acquire in any

partnership or joint venture and to invest additional money in any such partnership or joint venture; to comply with all of the terms and provisions of any partnership or joint venture agreement; and to invest in and become a party to or a member of any other partnership or joint venture upon such terms and conditions as he or it may deem advisable.

(i) To cause any securities or other property held by the trustee to be registered and held in the name of a nominee.

(j) In the division or distribution of any trust fund, or any part thereof, to make partition, division or distribution of property in kind, and to cause any share of such property to be composed of cash, property or undivided interests in property different in kind from any other share, without regard to or adjustment for the income tax basis of the property so divided or distributed.

(k) To pay any sum or deliver any property, including income, which any minor shall either be entitled to receive or to have applied for his or her use or benefit under any provision of this agreement, in the discretion of the trustee, either to such minor, to a parent of such minor, to the guardian of the property of such minor, to an adult with whom such minor resides, or to a custodian for such minor under a uniform transfers to minors act, or similar statute, in which case the trustee shall have power to designate as such custodian any person including itself and to elect to treat the age at which such property shall be required to be delivered to such minor as being the age of 21 years; and such parent, custodian or adult shall not be required to obtain letters of guardianship and such parent, guardian, custodian or adult shall not be required to give any bond or other security for any such payment or delivery and the receipt of such parent, guardian, custodian or adult for such payment or delivery shall be an absolute protection to the trustee and a full, complete and final release and discharge from all further accountability in respect of any such payment or delivery.

(l) To employ and separately compensate such custodians, legal counsel, investment counsel, accountants, securities and real estate brokers, and such other persons as the trustee deems proper, to delegate authority (including discretionary investment authority) thereto, and to pay the reasonable expenses incurred in connection therewith from

principal or income, or partly from principal and partly from income, with or without the approval of any court.

(m) To retain investment advisors (including those affiliated with any trustee) and to pay the compensation and fees of such investment advisors from the trust fund, which compensation or fees shall not be charged against the compensation of any trustee, and to delegate to investment advisors the authority to purchase and sell particular investments.

(n) To render and file or to abstain from rendering or filing any inventory or periodic account in any court.

(o) In good faith and with reasonable care, to do all such acts, take all such proceedings and exercise all such rights and privileges, although not hereinbefore specifically mentioned, with relation to any such property as if the absolute owner thereof, and in connection therewith to enter into any covenants or agreements binding any trust created hereunder.

(p) To allocate any portion of the grantor's exemption under Section 2631(a) of the Code to any property as to which the grantor is the transferor, including any property transferred to by him during life as to which he did not make an allocation prior to his death.

(q) To retain or sell the trust property and to invest and reinvest the same in all forms of property, including, without limitation, stocks, bonds, mutual funds, notes, securities or other property.

(r) The trustee shall have the power to employ, and to delegate any of his or its discretionary and nondiscretionary powers to agents, including, but not limited to, attorneys, investment advisors, money managers, appraisers or accountants as he or it deems necessary and proper and to pay for such services from the trust property.

(s) To engage any corporation, partnership or other entity affiliated with the corporate trustee (an "Affiliated Entity") to render services to any trust hereunder, including, without limitation: to act as a broker or dealer to execute transactions, (including the purchase of any securities

currently distributed, underwritten or issued by an Affiliated Entity), at standard commission rates, markups or concessions and to provide other management or investment services, including the custody of assets, at such Affiliated Entity's standard rates, and to pay for any such services from trust property without reduction for any compensation paid to the corporate trustee for its services as trustee except to the extent such services are included in its compensation, as described in its published fee schedule.

(t)  To invest in open-end or closed-end investment companies offered by an Affiliated Entity or to which an Affiliated Entity may render services for compensation without reduction in the corporate trustee's compensation for any fees paid to such Affiliate Entity by such investment company.

(u)  To invest trust assets or sweep cash awaiting distribution or investment into its own deposits or the deposits of an Affiliated Entity without the reduction for any fees paid by such Affiliated Entity.

## ARTICLE IX

### SUCCESSOR TRUSTEES

Section 9.1  If the grantor ceases to act as a trustee hereunder or if at any time the grantor cannot carry out his duties as a trustee because of his physical or mental incapacity or otherwise cannot act, during any period of incapacity, MERRILL LYNCH BANK & TRUST CO., FSB shall act as successor trustee.

Section 9.2  Physical or mental incapacity of the grantor shall be conclusively established if two (2) licensed physicians issue written certificates to that effect.  In the absence of these certificates, the successor trustee or any

beneficiary may petition the court having jurisdiction over this trust to remove the grantor as trustee. The successor trustee or the beneficiary who so petitions the court shall incur no liability to any beneficiary of this trust or to the grantor as a result of this petition, so long as the petition is filed in good faith and in the reasonable belief that the grantor is physically or mentally incapacitated or otherwise cannot act.

Section 9.3 Any trustee may resign as trustee of any trust hereunder at any time by written notice delivered to any co-trustee and to all beneficiaries to whom current trust income may or must then be distributed or to all beneficiaries who would have an immediate right to withdraw all or part of a contribution to the trust if a contribution were then made, or to the natural or legal guardians of such beneficiaries (the "Beneficiaries"). Such resignation shall be effective upon the written appointment and acceptance of a successor trustee, subject to the appointment in Section 9.1. A majority of the Beneficiaries shall have the power to appoint a successor trustee. If in default of such appointment of the office of trustee would be vacant and none has been appointed, then sixty days following the trustee's initial notice of its intent to resign, the trustee shall have the power to petition the court at the trust's expense (including reasonable attorney's fees) to

258685-1/8320-00001

-19-

appoint its successor.  No bond or other security shall be required of the trustee in any jurisdiction.

Section 9.4   Each successor trustee shall have the same powers and duties set forth herein for the initial trustee, without the necessity of any conveyance or transfer.

Section 9.5   No successor trustee shall have any responsibility for the acts or omissions of his, her or its predecessors and shall have the right, but not the duty, to audit or investigate the accounts or administration of a predecessor and shall have no duty to take action to obtain redress for breach of trust, unless expressly requested to do so in writing by a beneficiary of this trust.

ARTICLE X

COMMISSIONS

Section 10.1  A  corporate  trustee  shall  receive payment for its services in accordance with its schedule of rates in effect at the time such compensation becomes payable.

Section 10.2  Any  individual  trustee  serving  under this agreement at any time shall be entitled to the commissions allowed under the laws of the State of New York in effect from time to time.

258685-1/8320-00001

-20-

## ARTICLE XI

### ACCOUNTINGS

Section 11.1   The trustee may, but shall not be required to, at any time and from time to time, file an account of his or its administration at any time with a court of competent jurisdiction.   The successor trustee many render an account of its administration of the trust to the grantor at any time, and the grantor's approval thereof shall be binding upon all persons interested in the trust.   Prior to transferring any or all of the assets of any trust hereunder to a successor trustee or to making any partial or complete distribution of trust principal, the trustee may require an approval of his or its account by release and discharge from the grantor, if living, or after the grantor's death by a release and discharge from either (i) those competent beneficiaries currently eligible to receive income or principal and those who would succeed to principal were the trust to then terminate (which release(s) and discharge(s) shall be binding on all persons at any time interested in the trust) or (ii) a court of competent jurisdiction.   All of the trustee's fees and expenses (including reasonable attorneys' fees) attributable to any such accounting and approval shall be paid by the trust.

258685-1/8320-00001

## ARTICLE XII

## GENERAL PROVISIONS

Section 12.1   No  person  dealing  with  the  trustee
shall be required to inquire into the authority of the trustee
as to any transaction, or to account for or see to the
application of any moneys or other property paid or delivered to
the trustee.

Section 12.2   If any provision of this Agreement is
unenforceable, the remaining provisions shall nevertheless be
carried into effect.

Section 12.3   A  corporate  trustee  may  cause  all  or
any part of any trust hereunder to be maintained or managed in
any jurisdiction and may hold any trust property in the name of
its nominee or a nominee of any corporation, partnership or
other entity affiliated with the corporate trustee.

Section 12.4   The term "trustee" as used herein shall
refer to any named trustee, whether original or successor, or in
the masculine, feminine or neuter gender.

IN WITNESS WHEREOF, this instrument has been executed
by the grantor and the trustee as of the day and year first
above written.

_____
ROGER PRIGENT, grantor and trustee

258685-1/8320-00001

-22-

STATE OF NEW YORK        )
                         :   ss.:
COUNTY OF NEW YORK ·  )


On the 22 day of March          , 2010, before me, the
undersigned, a Notary Public in and for said state, personally
appeared ROGER PRIGENT known to me or proved to me on the basis
of satisfactory evidence to be the individual whose name is
subscribed to the within instrument and acknowledged to me that
he executed the same in his capacity, and that by his signature
on the instrument, the individual, or the person upon behalf of
which the individual acted, executed the instrument.


_____
Notary Public

P. GREGORY HESS
Notary Public, State of New York
No. 01HE6081823
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires June 30, 2010

SCHEDULE A

$100.

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

YVONNE PRIGENT LACKS

     Plaintiff,

v.

                             Civil Action No. _____

BANK OF AMERICA, N.A., AS
SUCCESSOR IN INTEREST TO MERRILL
LYNCH BANK & TRUST CO., FSB;
DEUTSCHE BANK TRUST COMPANY,
N.A., AS PURPORTED SUCCESSOR
TRUSTEE OF ROGER PRIGENT 2010
REVOCABLE TRUST DATED MARCH 22,
2010; DAVIDSON, DAWSON & CLARK,
LLP; P. GREGORY HESS; AND
JONATHAN KASS

     Defendants.

## CONSENT TO AND JOINDER IN REMOVAL

Defendants Davidson, Dawson & Clark, LLP and P. Gregory Hess hereby give notice that they join in and consent to the Notice of Removal to be filed by Co-Defendant Jonathan Kass on October 10, 2016. Defendants adopt and incorporate by reference herein all those grounds in support of the removal of this action from the Circuit Court, Seventeenth Judicial Circuit, in and for Broward County, Florida to the United States District Court for the Southern District of Florida, as identified in the Notice of Removal. Defendants reserve all right to contest personal jurisdiction.

                               KLEIN GLASSER PARK & LOWE, P.L.

Dated: October 10 , 2016       By: _____
                               Helen L. Miranda, Esq.
                               Robert Michael Klein, Esq.
                               Datran Two - Suite 2000
                               9130 South Dadeland Boulevard
                               Miami, FL 33156
                               *Attorneys for Defendants*
                               *Davidson, Dawson & Clark, LLP and*
                               *P. Gregory Hess*

1

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

YVONNE PRIGENT LACKS

    Plaintiff,

v.

                        Civil Action No. _____

BANK OF AMERICA, N.A., AS
SUCCESSOR IN INTEREST TO MERRILL
LYNCH BANK & TRUST CO., FSB;
DEUTSCHE BANK TRUST COMPANY,
N.A., AS PURPORTED SUCCESSOR
TRUSTEE OF ROGER PRIGENT 2010
REVOCABLE TRUST DATED MARCH 22,
2010; DAVIDSON, DAWSON & CLARK,
LLP; P. GREGORY HESS; AND
JONATHAN KASS

    Defendants.

### CONSENT TO AND JOINDER IN REMOVAL

Defendant Deutsche Bank Trust Co., N.A. ("DBTC"), in its capacity as Trustee for the

Roger Prigent Revocable Trust, hereby gives notice that it joins in and consents to the Notice of

Removal to be filed by Co-Defendant Jonathan Kass on October 10, 2016. DBTC adopts and

incorporates by reference herein all those grounds in support of the removal of this action from

the Circuit Court, Seventeenth Judicial Circuit, in and for Broward County, Florida to the United

States District Court for the Southern District of Florida, as identified in the Notice of Removal.

                    DUANE MORRIS, LLP

Dated: October _10_, 2016    By:    _____

                    Michael J. Shuman, Esq.
                    200 South Biscayne Boulevard
                    Suite 3400
                    Miami, FL 33131
                    *Attorneys for Defendant*
                    *Deutsche Bank Trust Co., N.A., in its capacity as*
                    *Trustee for the Roger Prigent Revocable Trust*

# EXHIBIT D

IN THE CIRCUIT COURT, SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR
BROWARD COUNTY, FLORIDA

YVONNE PRIGENT LACKS

      **Plaintiff,**

v.

BANK OF AMERICA, N.A., AS
SUCCESSOR IN INTEREST TO
MERRILL LYNCH BANK & TRUST CO.,
FSB; DEUTSCHE BANK TRUST
COMPANY, N.A., AS PURPORTED
SUCCESSOR TRUSTEE OF ROGER
PRIGENT 2010 REVOCABLE TRUST
DATED MARCH 22, 2010; DAVIDSON,
DAWSON & CLARK, LLP; P. GREGORY
HESS; AND JONATHAN KASS

      **Defendants.**

Civil Action No. CACE-16-015005

## NOTICE OF FILING OF REMOVAL

**TO:**    Clerk's Office
Seventeenth Judicial Circuit, Civil Division
Broward County Courthouse
201 S.E. 6th Street, Room 881
Fort Lauderdale, FL 33301

William E. Anderson
Sean P. Sheppard
The Andersen Firm
500 E. Broward Boulevard, Suite 1600
Fort Lauderdale, FL 33394
*Attorneys for Plaintiff Yvonne Lacks*

Michael J. Shuman
Duane Morris, LLP
200 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
*Attorneys for Defendant Deutsche Bank Trust Co., N.A.*

Robert Michael Klein
Helen L. Miranda
Klein Glasser Park & Lowe, P.L.
Datran Two - Suite 2000
9130 South Dadeland Boulevard
Miami, FL 33156
*Attorneys for Defendants Davidson, Dawson & Clark, LLP and*
*P. Gregory Hess*

**YOU ARE HEREBY NOTIFIED** that, on or about the 10th day of October, 2016,

Defendant Jonathan Kass, with the consent of Defendants Bank of America, N.A.; Deutsche

Bank Trust Co., N.A., in its capacity as Trustee of the Roger Prigent Revocable Trust; Davidson,

Dawson & Clark, LLP; and P. Gregory Hess, ("Defendants") caused to be filed in the United

States District Court for the Southern District of Florida a Notice of Removal removing the

above-styled action from the Seventeenth Judicial Circuit, Civil Division, in and for Broward

County Florida, to the United States District Court for the Southern District of Florida.  A copy

of the Notice of Removal is attached hereto as **Exhibit A** (without exhibits).  The filing of this

Notice with the Clerk of Seventeenth Judicial Circuit, Civil Division, in and for Broward County

Florida effected immediate removal of this action to the United States District Court for the

Southern District of Florida.

**PLEASE TAKE FURTHER NOTICE** that this Notice of that filing is given pursuant

to the provisions of 28 U.S.C. §1446(d) as amended.

Dated: October 10, 2016

**BRESSLER, AMERY & ROSS, P.C.**
*Attorneys for Defendants*
*Bank of America, N.A. and Jonathan Kass*

By:  _____*/s/ Alex J. Sabo*_____

Alex J. Sabo, Florida Bar #262821
SunTrust International Center,
One S  E 3rd Avenue, 19th Floor
Miami, FL 33131
Phone: (305) 501-5480
asabo@bressler.com

## CERTIFICATE OF SERVICE

On this day, I certify that I caused the foregoing to be filed by electronic filing:

Clerk's Office
Seventeenth Judicial Circuit, Civil Division
Broward County Courthouse
201 S.E. 6th Street, Room 881
Fort Lauderdale, FL 33301

I also hereby certify that a true copy of the above and foregoing notice was delivered by electronic filing to:

William E. Anderson
Sean P. Sheppard
ssheppard@theandersenfirm.com
The Andersen Firm
500 E. Broward Boulevard, Suite 1600
Fort Lauderdale, FL 33394
*Attorneys for Plaintiff Yvonne Lacks*

Michael J. Shuman
MJShuman@duanemorris.com
Duane Morris, LLP
200 South Biscayne Boulevard
Suite 3400
Miami, FL33131
*Attorneys for Defendant Deutsche Bank Trust Co., N.A.*

Robert Michael Klein
Helen L. Miranda
MirandaH@kgplp.com
Klein Glasser Park & Lowe, P.L.
Datran Two - Suite 2000
9130 South Dadeland Boulevard
Miami FL 33156
*Attorneys for Defendants Davidson, Dawson & Clark, LLP and
P. Gregory Hess*

_____
*/s/ Alex J. Sabo*
Alex J. Sabo

Dated: October 10, 2016